UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

DANA SPAGNUOLO,

                              Docket No.: 2:26-cv-4240

                Plaintiff,

      -against-                              **COMPLAINT**

COUNTY OF NASSAU, and NASSAU          *Jury Trial Demanded*
COUNTY OFFICE OF THE MEDICAL
EXAMINER,

                Defendants.
----------------------------------------------------------X

Plaintiff DANA SPAGNUOLO, by and through her attorneys, the BELL LAW GROUP PLLC, respectfully alleges, upon knowledge as to herself and her own actions, and upon information and belief to all other matters, as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Dana Spagnuolo, formerly employed as a DNA analyst by Defendants, lawfully participated in an investigation (the "Investigation") conducted by the Nassau County Inspector General ("NCIG") and the New York State Office of the Inspector General ("NYSIG") into alleged illegal activities by individuals working within and on behalf of the Nassau County Crime Lab (the "Crime Lab"). In retaliation for Plaintiff's participation in the Investigation, the Defendants commenced a campaign of retaliation against her which culminated with the Defendants' termination of her employment on November 14, 2024.

2.      As more fully set forth below, in retaliation for Plaintiff's participation in the Investigation, the Defendants disciplined Plaintiff, stripped her of her job duties, subjected her to verbal abuse and harassment, and terminated her employment. The Defendants' actions are particularly egregious in light of Defendants' crucial role in the enforcement of County and State law. Sadly, Defendants and their decision-makers believed themselves to be above the law and brandished the power of the State to ruthlessly punish Plaintiff.

3.      Notwithstanding the Defendants' mistaken belief that they are not bound by the law, Plaintiff's participation in the Investigation was protected by the First Amendment of the United States Constitution and New York Civil Service Law Section 75b ("NYCSL"). On July 25, 2023, Plaintiff filed a complaint in the Nassau County Supreme Court which stated a cause of action for retaliation against Plaintiff pursuant to NYSCL, Index. No. 611769/2023 (the "Lawsuit"). This case is still pending. The Lawsuit alleged that Plaintiff was retaliated against by the Defendants for participating in the Investigation into the allegedly unlawful activities of the Crime Lab, a clear matter of public concern in its own right.

4.      On November 14, 2024, Plaintiff was dutifully responding to Defendants' discovery demands, as required by a court order, and sent her attorney a document specifically requested by Defendants. Though Defendants explicitly demanded the production of this document, Plaintiff was terminated for sending the document to her attorney, as a clear pretext for retaliation against the Plaintiff in violation of the First Amendment and the NYSCL.

5.      As a direct and proximate result of Defendants' retaliation and termination, Plaintiff has suffered a chilling effect on the exercise of her First Amendment right to free speech, damage to her professional reputation, economic loss, and emotional distress. Further, Plaintiff's First Amendment Right to Petition the Government without retaliation was violated when the

Defendants admittedly terminated her employment as a result of the commencement of the Lawsuit.

6.    In retaliation for Plaintiff commencing the Lawsuit, participating in the Investigation, and for engaging in protected speech, the Defendants wrongfully terminated Plaintiff's employment, for which she deserves just compensation.

## JURISDICTION AND VENUE

7.    This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§1331 & 1343.

8.    Venue is proper in this case pursuant to 28 U.S.C. §1391 because (1) the Defendants are located in Nassau County, New York, which is located in the Eastern District of New York, and (2) the events which give rise to Plaintiff's claims took place in Nassau County, which is located in the Eastern District of New York.

## PARTIES

9.    Plaintiff Dana Spagnuolo is a resident and domiciliary of Nassau County, New York. At all relevant times to the Complaint, Plaintiff was an "employee" of the Defendants.

10.    Defendant County of Nassau was and still is a municipal corporation incorporated under and by virtue of the laws of the State of New York. Its principal place of business is located at 60 Charles Lindbergh Boulevard, Uniondale, New York 11553. At all times relevant herein, Defendant County of Nassau was Plaintiff's employer.

11.    Defendant Nassau County Office of the Medical Examiner was and still is a municipal corporation incorporated under and by virtue of the laws of the State of New York. Its principal place is located at 2251 Hempstead Turnpike, Building R, East Meadow, New York

3

11554. At all times relevant herein, Defendant Nassau County Office of the Medical Examiner was Plaintiff's employer.

## FACTUAL BACKGROUND

*Plaintiff's Employment with the Defendants*

12.     Plaintiff was employed by Defendants from May 27, 2005, until her wrongful termination on November 14, 2024.

13.     Plaintiff served as a Forensic Scientist III (Biology/DNA), performing forensic DNA analysis on biological evidence for use in criminal investigations and court proceedings.

14.     Plaintiff never received any negative written performance evaluations relating to her work as a Forensic Scientist.

15.     Plaintiff commenced maternity leave on April 13, 2020, and returned from leave on October 8, 2021.

16.     On October 12, 2021, Defendants issued Plaintiff a competency examination, which she was required to complete as a condition of reinstatement to casework.

17.     The competency examination was practical in nature and required the examinee to personally perform physical laboratory work to generate results.

18.     On November 19, 2021, Plaintiff completed the examination and submitted it to her supervisor, Sandra McNulty, for technical review.

19.     Plaintiff independently performed all work associated with the examination and personally examined, processed, and analyzed the assigned test samples to generate the resulting data.

20.     On November 29, 2021, Defendants subjected Plaintiff's competency examination to a non-standard audit that deviated from their established policies and procedures for reviewing examinations.

21.     Following this audit, Crime Lab management falsely alleged that Plaintiff had not independently performed the work required for the examination.

22.     Plaintiff did not cheat or obtain answers from any external source to complete the competency examination.

23.     Defendants failed to conduct any substantive review of Plaintiff's competency examination and instead deemed it a failure based on the audit.

24.     Despite Plaintiff's completion of the competency examination and generation of her own results, Defendants refused to reinstate her to casework.

*The Investigation*

25.     On September 13, 2021, the NCIG received an anonymous confidential complaint regarding the Crime Lab.

26.     The Crime Lab is owned and operated by the Defendants.

27.     On October 8, 2021, the NCIG contacted Plaintiff to discuss its investigation (the "Investigation") into alleged illegal activities and improprieties at the Crime Lab.

28.     Plaintiff did not initiate contact with the NCIG.

29.     Plaintiff expressed hesitation to NCIG officials about cooperating in the Investigation due to concerns about disclosing confidential laboratory information.

30.      NCIG officials assured Plaintiff that her disclosures were protected and referred her to section §187 of the Nassau County Charter, which governs the authority and investigative functions of the Inspector General.

31.     Based on these assurances and the authority of §187, Plaintiff agreed to cooperate with the NCIG in the Investigation.

5

32. When Plaintiff first agreed to cooperate with the NCIG in October 2021, the Nassau County Charter, including §187, was publicly available on the County's website and defined the Inspector General's authority to investigate misconduct.

33. Plaintiff's cooperation in the Investigation was not part of her official job duties as a Forensic Scientist III and included multiple discussions with the NCIG regarding her knowledge of potential illegal activity at the Crime Lab.

34. During her cooperation with the NCIG, Plaintiff provided information concerning conduct she reasonably believed was illegal or unethical in connection with the operations of the Crime Lab.

35. On November 17, 2021, officials from the NCIG made their first official visit to the Crime Lab to begin investigating the reported allegations.

36. On December 2, 2021, the Investigation was transferred from the NCIG to the NYSIG.

37. The information Plaintiff provided to the NCIG was also transferred to the NYSIG for further investigation.

38. Following the transfer, Plaintiff continued to cooperate with the NYSIG, including two in-person interviews.

39. The NCIG and NYSIG are public bodies as defined by Section 740 of the NYLL.

40. Plaintiff participated in the Investigation in good faith.

41. Defendants were aware of the Investigation as early as November 2021.

42. Defendants were aware of Plaintiff's participation in the Investigation, including her whistleblowing activity, as early as November 2021.

6

43. After becoming aware of Plaintiff's participation in the Investigation, Defendants began taking actions against Plaintiff that escalated over time.

44. On November 29, 2021, Sandra McNulty sent an email to all laboratory personnel addressing the unauthorized release of DNA data from the National DNA Database and outlining potential criminal penalties for noncompliance.

45. On November 29, 2021, Karen Dooling, Acting Assistant Director of the Crime Lab and Quality Assurance Manager for the Biology Section, notified all laboratory staff via email that management would be investigating a breach in data security and the unauthorized dissemination of case information.

46. These emails intimidated Plaintiff and discouraged her continued participation in the Investigation.

47. On December 14, 2021, Keith Cromwell, Deputy Medical Examiner for Administration, emailed all Medical Examiner employees requesting acknowledgment of an updated Whistleblower Policy.

48. Plaintiff's participation in the Investigation concluded in or about the Summer of 2022.

*The Competency Examination*

49. Defendants' retaliation against Plaintiff for her participation in the Investigation began on November 29, 2021, when Sandra McNulty informed Plaintiff that she could not resume casework because her competency examination had not been reviewed.

50. On December 7, 2021, Sandra McNulty instructed Plaintiff to perform duties not commensurate with her position as a Forensic Scientist III pending review of her competency examination.

51. On December 14, 2021, Plaintiff raised concerns with Carolyn Kelly, Deputy Medical Examiner for Laboratories, regarding the delay in reviewing her competency examination.

52. On December 17, 2021, Carolyn Kelly requested that Plaintiff attend a meeting and advised her to bring a union representative.

53. On December 20, 2021, Plaintiff notified the NCIG of the meeting request and expressed concern that the Crime Lab was aware of her participation in the Investigation and that the meeting might be retaliatory.

54. Plaintiff attended the meeting on December 21, 2021.

55. The meeting was attended by Plaintiff, Carolyn Kelly, Keith Cromwell and Plaintiff's CSEA Local 830 union representative, Richard Dopkin.

56. During the meeting, Plaintiff was advised that an audit had been performed on her examination, without explanation.

57. The audit occurred contemporaneously with Defendants' knowledge of the Investigation at the Crime Lab.

58. Plaintiff was further informed that the audit revealed she had accessed another scientist's examination electronically while completing her own.

59. Plaintiff acknowledged viewing another scientist's examination and explained that her access was administrative only and had no bearing on, or influence over, her test results.

60. Plaintiff further explained that her results were derived solely from the physical laboratory work and DNA analysis she personally performed on her assigned test samples.

61. Plaintiff's work and results on the competency examination were generated without reliance on any other individual's work or results.

8

62.    Plaintiff produced 189 pages of data and work product and authored a nine-page report containing responses that differed from those of the other examiner.

63.    At the conclusion of the meeting, Plaintiff was advised that her conduct might necessitate reporting to the ANSI National Accreditation Board ("ANAB") and other authorities and require corrective action.

64.    Plaintiff was surprised, as she believed she had complied with all applicable guidelines and policies for completing the examination.

65.    After the meeting, Plaintiff reviewed the Crime Lab's Quality Assurance Manual and identified a retraining policy stating that retraining "may be necessary for employees who were out for an extended leave or absence of a year or more."

66.    Plaintiff had been on maternity leave for more than one year and fell within the category of employees for whom retraining may be necessary under that policy.

67.    On December 23, 2021, Plaintiff's union representative notified Carolyn Kelly of the retraining policy, but the Crime Lab refused to acknowledge that it applied to Plaintiff.

68.    At the time of the Plaintiff's competency examination, the Quality Assurance Manual contained no documented policy requiring testing independence for such examinations. That requirement was not adopted until December 30, 2022, after the allegations against Plaintiff.

69.    The Crime Lab relied on a June 25, 2018, email from Mark Gil, Quality Assurance Manager for the Latent Prints, Chemistry and Firearms Sections, to assert that Plaintiff should have been aware that the conduct was prohibited.

70.    The June 25, 2018, email arose from an incident in the Latent Print Section involving an examiner who accessed a supervisor's proficiency test amid suspected cheating.

71. In that incident, the Crime Lab took adverse action against the examiner who accessed the test, but not against the individual whose test was the subject of suspected cheating.

72. The Crime Lab nevertheless treated this email as applicable policy to Plaintiff, even though it concerned a different section and was issued by a manager outside of Plaintiff's department.

73. Plaintiff does not recall receiving the June 25, 2018, email and only became aware of it when it was later cited in connection with her reprimand.

74. On January 3, 2022, Dr. Pasquale Buffolino, Acting Director of the Crime Lab, issued Plaintiff a Corrective Action Notification and reported her conduct to ANAB, The Office of the Nassau County District Attorney, and the Nassau County Police Department.

75. The Corrective Action Notification stated that Plaintiff did not perform the work required for the competency examination independently.

76. That statement was inaccurate, as Plaintiff had performed the work independently and had previously communicated this to the Crime Lab.

77. On January 6, 2022, Carolyn Kelly informed Plaintiff that a repeat competency examination would be administered, with a practice test provided beforehand.

78. On January 10, 2022, Plaintiff was issued a practice test by Daniel Arana, Training Coordinator, at the direction of Dr. Tamara Bloom, Chief Medical Examiner of Nassau County.

79. On January 18, 2022, Plaintiff completed the practice examination and submitted it for review.

80. Defendants determined that the Plaintiff passed the practice examination but did not administer the subsequent competency examination as previously indicated.

81. On January 26, 2022, Plaintiff attended a meeting with Dr. Pasquale Buffolino, Karen Dooling, Sandra McNulty, Keith Cromwell, and her union representative to discuss the Corrective Action Notification.

82. During the meeting, Defendants stated that formal retraining was unnecessary because the competency examination constituted her retraining, even though they were aware of Plaintiff's participation in the Investigation.

83. The meeting attendees further acknowledged that changes to the Lab's policies and procedures during Plaintiff's maternity leave were not significant enough to require retraining prior to the examination.

84. Plaintiff's conduct did not warrant corrective action or reporting to ANAB, The Office of the Nassau County District Attorney, or the Nassau County Police Department.

85. As a result of the Defendants' decision to audit Plaintiff's examination and their false allegations of misconduct, Plaintiff was not reinstated to casework.

86. The actions described above concerning Plaintiff's competency examination were taken by Defendants in retaliation for her participation in the Investigation.

87. The actions taken against Plaintiff in connection with her competency examination marked the beginning of an escalating pattern of retaliatory conduct.

88. On August 8, 2022, Daniel Arana testified under oath before the NYSIG that Plaintiff generated the data for her competency examination independently.

*Retaliatory Discipline Against Plaintiff*

89. On May 25, 2022, Defendants issued Plaintiff a Notice of Personnel Action imposing formal discipline.

90.    The discipline was issued at a formal meeting attended by members of the Medical Examiner's Office leadership team.

91.    The Notice of Personnel Action stated that Plaintiff had engaged in unspecified "improper data access."

92.    The Notice did not provide any specifics regarding the alleged improper data access.

93.    Another Crime Lab employee who participated in the Investigation was issued the same discipline on the same date as Plaintiff.

94.    Despite Plaintiff's disclosures during the Investigation, Defendants imposed formal discipline.

95.    By May 27, 2022, shortly after this discipline was issued, the County-hosted version of the Nassau County Charter, including §187, had been removed or otherwise made less accessible.

96.    The Charter, including §187, had previously been relied upon by the NCIG in assuring Plaintiff that her disclosures and participation were protected.

97.    The discipline intimidated Plaintiff and discouraged her continued participation in the Investigation.

98.    The disciplinary action described above was taken by Defendants in retaliation for Plaintiff's participation in the Investigation.

*Other Retaliatory Actions Against Plaintiff*

99.    In addition to the actions described above, Plaintiff was subjected to verbal abuse and intimidation as a result of her participation in the Investigation.

100.   For example, on June 13, 2022, Dr. Pasquale Buffolino engaged in a prolonged and aggressive tirade directed at Plaintiff in close proximity to her desk.

101.   The incident lasted approximately 75 minutes.

102.   During the incident, Dr. Buffolino shouted profanities and pounded his desk, stating, among other things, "this has to fucking stop," "enough, enough already," "the state is saying it's a felony" and referring to Plaintiff as "a liar."

103.   Plaintiff was frightened by Dr. Buffolino's conduct and contacted Dr. Tamara Bloom, who directed her to file a formal complaint regarding the incident.

104.   On June 14, 2022, during a meeting attended by Plaintiff, Karen Dooling and Mark Gil, Dr. Buffolino acknowledged his June 13, 2022, conduct.

105.   On June 15, 2022, Plaintiff filed a workplace violence report with the Defendants regarding the incident.

106.   Defendants failed to take corrective action against Dr. Buffolino in response to Plaintiff's complaint regarding his conduct.

107.   Plaintiff was further subjected to a pattern of ongoing monitoring, exclusion and other adverse treatment in the workplace arising from her participation in the Investigation.

108.   Plaintiff was subjected to continuous video surveillance of her workspace, including close monitoring of her comings and goings and heightened scrutiny of her daily activities.

109.   Upon information and belief, the video feed of Plaintiff's workspace was displayed in an enlarged format on Karen Dooling's desktop in a manner visible to other employees.

110.   Plaintiff's workplace conversations were recorded without her knowledge and consent, as admitted by Daniel Arana in sworn testimony before the NYSIG.

111. Defendants made a disclosure to The Office of the Nassau County District Attorney, after which Plaintiff was no longer permitted to testify as an expert witness at trial, resulting in professional harm.

112. Defendants excluded Plaintiff from Biology Section meetings and mock court participation, where she previously advised trainees and provided critique.

113. Defendants denied Plaintiff access to laboratory files and folders available to other laboratory employees. For example, employees were required annually to sign off on reviewing ANAB's Guiding Principles in a network folder accessible to them. Plaintiff lacked access and was required to report completion to Karen Dooling, who updated the record on her behalf.

114. During a laboratory-wide meeting on September 13, 2022, Defendants publicly discussed Plaintiff's conduct in a manner that made her identifiable to other employees, resulting in embarrassment.

115. Employees in the Biology Section with whom Plaintiff had worked for many years ceased communicating with her and avoided interaction in the workplace.

116. During the holiday season, the Biology Section customarily displayed Christmas stockings bearing employees' names; Plaintiff's stocking, which had previously been included, was omitted beginning in December 2022.

117. On June 15, 2023, Plaintiff was excluded from a workplace gathering held within the laboratory to celebrate the upcoming wedding of two coworkers.

118. In or about December 2023, Defendants assigned Plaintiff to report to Karen Dooling, a senior member of the Crime Lab, who does not directly supervise other Forensic Scientist employees, and to whom such employees do not ordinarily report.

119.    Despite assigning Plaintiff to report to Karen Dooling, Defendants did not update the organizational chart to reflect Plaintiff's actual reporting structure and continued to list her within the Biology Section under Sandra McNulty.

120.    The actions described above were taken by Defendants in retaliation for Plaintiff's participation in the Investigation.

121.    The ongoing monitoring, exclusion, and intimidation described above formed part of a continuing pattern of retaliatory conduct that intensified over time.

*Plaintiff's Functional Demotion*

122.    On June 14, 2022, the Crime Lab leadership team informed Plaintiff that she would no longer be permitted to perform casework and was permanently reassigned to the Evidence Department.

123.    Defendants' decision severely damaged Plaintiff's professional reputation and effectively ended her career as a Forensic Scientist.

124.    Defendants reassigned Plaintiff in a manner that impaired her eligibility for future promotions and career advancement within the Crime Lab, effectively preventing her from advancing from her position as a Forensic Scientist III.

125.    On August 1, 2022, Plaintiff filed a grievance challenging the Defendants' decision to permanently remove her from casework.

126.    On September 9, 2022, Defendants relocated Plaintiff's workstation from the administrative office to the evidence intake area, a workspace physically isolated from other Forensic Scientists.

127.    Plaintiff was required to work in the evidence intake area under conditions involving recurring offensive odors and ongoing pest control issues.

128.    Defendants placed Plaintiff under continuous video surveillance, subjecting her to heightened scrutiny not imposed on other Forensic Scientist employees.

129.    Defendants reassigned Plaintiff to perform only clerical and custodial duties related to the accessioning of forensic evidence in the Evidence Department.

130.    Those duties are assigned to a separate job classification and are not routinely performed by Forensic Scientist employees.

131.    Plaintiff performed the same duties as an employee assigned to the Evidence Technician 1 position, despite holding the title of Forensic Scientist III.

132.    Defendants assigned Plaintiff duties below her qualifications, resulting in diminished responsibilities and loss of seniority-based functions.

133.    Defendants assigned Plaintiff work that did not utilize her specialized knowledge, skills, or education.

134.    While assigned to the Evidence Department, Defendants denied Plaintiff access to continuing education and professional training opportunities necessary to maintain and advance her expertise.

135.    Throughout this period, Defendants did not update internal records, including the organizational chart, to reflect Plaintiff's reassignment to the Evidence Department.

136.    As a result of Plaintiff's reassignment to the Evidence Department, Plaintiff lost access to overtime opportunities afforded to other Forensic Scientist employees.

137.    Plaintiff's reassignment to the Evidence Department constituted a functional demotion, resulting in a material change in her job duties and responsibilities outside the scope of her position as a Forensic Scientist III.

138.   The reassignment described above was taken by Defendants in retaliation for her participation in the Investigation and effectively ended Plaintiff's career as a Forensic Scientist.

139.   As a result of Plaintiff's reassignment, her ability to advance to more senior positions with greater pay, responsibility, and prestige, including Forensic Scientist IV, was severely impaired, resulting in career-ending consequences for Plaintiff as a Forensic Scientist.

*Plaintiff's Termination*

140.   On July 25, 2023, Plaintiff filed a complaint in Nassau County Supreme Court alleging retaliation for engaging in protected whistleblowing activity.  The index number of this case is 611769/2023.

141.   On June 12, 2024, Defendants served Plaintiff with Discovery Demands, including numerous requests seeking all documents relating to Plaintiff's competency examination, including materials demonstrating its issuance, completion, submission, and Plaintiff's underlying work and analysis.

142.   In response to Defendants' discovery demands, Plaintiff provided her counsel with documents relating to the competency examination.

143.   On October 11, 2024, the Court issued an order setting a Discovery schedule and deadlines for the exchange of documents.

144.   On November 14, 2024, Defendants terminated Plaintiff's employment.

145.   The decision to terminate Plaintiff's employment was made by Dr. Tamara Bloom, Chief Medical Examiner of Nassau County, and/or one or more final policy makers of the Defendants, the exact roles of which will be established through discovery.

146.   Defendants stated that Plaintiff's termination was based on her alleged release of confidential laboratory information, despite having specifically requested documents relating to the competency examination in their discovery demands.

147.   After Plaintiff produced documents relating to the competency examination in response to Defendants' discovery demands, Defendants characterized those documents as confidential laboratory information.

148.   The test samples used in the competency examination were obtained from an external vendor, were not associated with any actual laboratory case, and did not constitute confidential or proprietary laboratory materials.

149.   The DNA profiles derived from the test samples did not correspond to any known or identifiable individuals and are of a type publicly displayed on the vendor's website.

150.   Plaintiff provided her counsel with documents relating to the competency examination in the course of her whistleblower litigation and as part of her participation in protected speech.

151.   The actions described above were taken by Defendants in retaliation for Plaintiff's sharing of information with her attorney during the discovery process and in connection with her protected speech and whistleblowing activity.

152.   Defendants terminated Plaintiff's employment for responding to their own discovery demands in her whistleblower litigation, in retaliation for her participation in that litigation and her protected speech, including activity protected by the First Amendment of the United States Constitution.

153.   The termination described above was also carried out in retaliation for Plaintiff's participation in the Investigation.

154.    Another Crime Lab employee who participated in the Investigation and, like Plaintiff, filed a complaint in Nassau County Supreme Court alleging retaliation for whistleblowing activity was terminated on April 24, 2024. This action caused Plaintiff to reasonably fear she would be subjected to similar treatment.

155.    The termination of Plaintiff's employment was the culmination of Defendants' ongoing retaliatory conduct.

156.    Defendants' retaliatory conduct against Plaintiff from November 29, 2021, through her termination on November 14, 2024, constitutes a continuing violation representing a single, uninterrupted course of retaliatory conduct.

157.    As a result of Defendants' actions, Plaintiff has suffered, and continues to suffer, emotional distress, anxiety, damage to her professional standing, and other damages.

*Municipal Policy and Custom*

158.    Defendants are municipal entities subject to suit under 42 U.S.C. §1983.

159.    The Constitutional violations herein were caused by the policies, customs, and practices of those municipal Defendants and by the decisions of individuals who constitute final policymakers for the County and the Medical Examiner's Office.

160.    At all relevant times, Dr. Tamara Bloom served as the Chief Medical Examiner of Nassau County and constituted a final policymaker for the Nassau County Office of the Medical Examiner with respect to personnel decisions, including discipline, reassignment, and termination of employees. The retaliatory actions taken against Plaintiff were approved by, directed by, or carried out with the knowledge and acquiescence of Dr. Tamara Bloom and other members of the Medical Examiner's Office's leadership team, including Dr. Pasquale Buffolino, Karen Dooling, Mark Gil, Sandra McNulty, Daniel Arana, Carolyn Kelly, and Keith Cromwell.

19

161.    The decisions made by the Defendants as described in this lawsuit were made at the highest levels of the Defendants' management. The decisions reflect the official policy of the municipal Defendants with respect to employees who cooperate with government investigators and who exercise their right to petition the government and courts.

162.    This policy of retaliating against employees who cooperate with government investigators and petition the government/courts is confirmed by the Defendants' identical actions with respect to other employees of the Defendants, including Robyn Fishkin.

163.    The Defendants' failure to train and supervise their employees with respect to the constitutional rights of employees who engage in protected speech and petition activity constitutes deliberate indifference to those rights.

164.    The Defendants' failure to discipline any of its employees for their retaliation against Plaintiff confirms that the Defendants' actions constituted official policy and endorsement of the retaliation against Plaintiff.

## AS AND FOR A FIRST CAUSE OF ACTION
*Violation of the First Amendment to the United States Constitution Freedom of Speech*

165.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as set forth fully herein.

166.    At all relevant times, Plaintiff was a public employee of Defendants.

167.    Through her participation in the NCIG and NYSIG's investigations into illegal activities by individuals working within the Crime Lab, Plaintiff raised concerns about potential illegal activity.

168.    The illegal activity at the Crime Lab is a matter of public concern.

169.    In making the above-referenced disclosures to the NCIG and NYSIG, Plaintiff was acting in her capacity as a member of the public and a citizen of the United States of America.

170. Plaintiff's statements to the NYSIG were through channels of discourse that are available to non-employee citizens.

171. Plaintiff's disclosures to the NCIG and NYSIG were not made pursuant to her official job duties as a DNA analyst. Plaintiff's official duties consisted of conducting DNA analysis on biological evidence, she had no official duty to report misconduct, cooperate with external government investigators, or disclose information about the activities of her supervisors and colleagues to outside law enforcement or investigative bodies.

172. Plaintiff did not initiate contact with the NCIG. The NCIG approached Plaintiff as a potential witness to wrongdoing. In agreeing to cooperate with the NCIG and NYSIG, Plaintiff acted in a capacity indistinguishable from that of any other citizen with knowledge of potential criminal activity who is contacted by law enforcement investigators.

173. The illegal activities at the Crime Lab, which directly impacted the integrity of DNA evidence used in criminal prosecutions throughout Nassau County, constitute matters of significant public concern. The reliability of forensic evidence in criminal proceedings implicates the administration of justice, the rights of criminal defendants, and the safety of the public. Plaintiff's disclosures therefore addressed issues that transcend her individual employment relationship and are of the type that citizens have an interest in being able to speak about freely without fear of governmental retaliation.

174. The Defendants' interest in the efficient operation of the Crime Lab does not encompass suppressing or retaliating against disclosures of criminal wrongdoing by laboratory personnel. No legitimate government interest outweighs a citizen's right to report illegal conduct by public officials to law enforcement investigators. Plaintiff's free speech interests, and the

public's interest in the integrity of Nassau County's forensic evidence, substantially outweigh any burden on Defendants' operations caused by Plaintiff's cooperation with the NCIG and NYSIG.

175. As a result of her participation in the investigation, Plaintiff was improperly disciplined, stripped of her job duties, subjected to verbal abuse and harassment, and terminated.

176. By imposing improper discipline, stripping Plaintiff of her job duties, subjecting her to verbal abuse and harassment, and terminating her, Defendants treated Plaintiff differently than they would treat a member of the general public under the circumstances.

177. As a direct and proximate result of Defendants' retaliation and termination, Plaintiff has suffered a chilling effect on the exercise of her First Amendment right to free speech, damage to her professional reputation, economic loss, and emotional distress.

178. By retaliating against Plaintiff, Defendants have chilled the exercise of free speech by persons with knowledge of the illegal activity in the Crime Lab.

179. By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial, but estimated to be no less than $1,000,000.00.

### AS AND FOR A SECOND CAUSE OF ACTION
*Violation of the First Amendment to the United States Constitution Right to Petition the Government*

180. Plaintiff repeats and reiterates the allegations set forth in the preceding paragraphs as set forth fully herein.

181. This cause of action is brought pursuant to 42 U.S.C. §1983.

182. At all times described here in Plaintiff was, and remains, possessed of a clearly established right to petition the government for the redress of grievances, as is explicitly afforded protection under the First Amendment.

183.    At all times described herein, the right to petition government for the redress of grievances encompasses Plaintiff's clearly established rights to avail herself of the New York State Court System by commencing and filing an action in New York State Supreme Court.

184.    Plaintiff's filing of the Summons and Complaint on July 25, 2023, was an exercise of her First Amendment right to petition the government.

185.    By imposing improper discipline, stripping Plaintiff of her job duties, subjecting her to verbal abuse and harassment, and termination, Defendants violated Plaintiff's First Amendment right to petition the government for redress of grievances.

186.    As a direct and proximate result of Defendants' retaliation and termination, Plaintiff has suffered a chilling effect on the exercise of her First Amendment right to petition the government for grievances, damage to her professional reputation, economic loss, and emotional distress.

187.    By retaliating against Plaintiff, Defendants have chilled the exercise of free speech and right to petition the government by persons with knowledge of the illegal activity in the Crime Lab.

188.    By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial, but estimated to be no less than $1,000,000.00.

**WHEREFORE,** Plaintiff prays that this court grant her judgment containing the following relief:

a. Impanel a jury to hear Plaintiff's claims;

b. An award of damages in an amount to be determined upon the trial of this matter to compensate Plaintiff for her monetary loss and damages, including Plaintiff's loss of past and future earnings, bonuses, compensation, and other employment benefits;

23

c. An award of damages to compensate Plaintiff for humiliation, embarrassment, damage to her good name, and emotional injury for each relevant cause of action;

d. An award of damages in an amount to be determined at trial to compensate Plaintiff for violations of her rights;

e. An award of reasonable attorneys' fees and costs related to Plaintiff's claims under 42 U.S.C. §1988;

f. Such other and further relief as this Court may deem just and proper.

Dated: Syosset, New York
July 15, 2026

Respectfully submitted,

*Paul A. Bartels*

_____
BELL LAW GROUP, PLLC
Paul Bartels, Esq.
Mary Bianco, Esq.
116 Jackson Avenue
Syosset, NY 11791
Ph: 516.280.3008
pb@belllg.com
*Attorneys for Plaintiff*